IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KYLE KURTZ,

        Petitioner,

        v.

WARDEN, BELMONT
CORRECTIONAL INSTITUTION,

        Respondent.

        **CASE NO. 2:19-CV-5186**
        **JUDGE EDMUND A. SARGUS, JR.**
        **Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Traverse, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED.**

## I.      BACKGROUND

Petitioner challenges his February 10, 2017 convictions after a jury trial in the Franklin Court of Common Pleas on aggravated robbery, kidnapping, murder, and aggravated murder. The trial court imposed a term of twenty years to life plus six years on firearm specifications. The state appellate court summarized the facts and procedural history of the case as follows:

> {¶ 2} In 2015, Jeanette Hampton lived at a residence on North James Road near Broad Street on the near east side of Columbus, Ohio. She lived there with her children, a 16-year old daughter, T.C., and a 12-year old son. Hampton's boyfriend was Brandon Brown, the victim in this case. There is no dispute that Hampton sold marijuana from her home and that appellant's friend, Jim Rose, had been a frequent customer for the previous 2 years. Appellant testified that he uses marijuana on a daily basis and that he had been to Hampton's home on approximately 40 occasions to buy marijuana from Hampton prior to June 26, 2015. Appellant estimated that he was accompanied by Rose on roughly 20 of his 40 prior drug buys from Hampton.

{¶ 3} Hampton testified in the early evening of June 26, 2015, she received a telephone call from appellant on her home phone. According to Hampton, appellant was angry and hostile on the phone, and he claimed that Brown owed him money. Hampton testified that Brown took the phone from her and that he began arguing with appellant over the phone and telling appellant that he did not owe him money. Hampton heard Brown repeating what appellant was saying to him over the phone. She heard Brown say "you going to come over here and shoot me with what?" (Tr. Vol. II at 105.) Hampton heard Brown say to appellant to "come on." (Tr. Vol. II at 106.).

{¶ 4} Though Hampton wanted to avoid a confrontation and asked Brown to leave, he insisted on staying to "make sure that nobody else that was in the house was harmed." (Tr. Vol. II at 107.) Hampton testified that a series of phone calls between Brown and appellant took place between 6:00 and 6:45 p.m. Brown told Hampton he was going to wait outside for appellant with a gun because appellant was coming there to shoot him.

{¶ 5} Hampton stated that about 15 minutes after Brown went outside, she looked out the window to her side door and she saw Brown standing right outside the door and she saw his gun laying on the hood of her vehicle just in front of the windshield wipers. She saw appellant standing about 6 feet in front of Brown, pointing a gun at Brown and repeatedly ordering him to get down on the ground. Hampton testified about what she saw as follows:

> [W]hen I looked out my window [Brown] was directly in front of my window. The gun was sitting on my front of my car on this (indicating) side of him. The gun was basically in the back of him so he wasn't even in front of the gun, I mean, where he could reach it.

(Tr. Vol. II at 123.)

{¶ 6} When Hampton went to get her phone to call police, she heard gunshots. When she looked out the window again, she saw Brown on his knees with his arms out and appellant walking back to his vehicle which was parked in the driveway. As Hampton started to go out the door to help Brown, she stopped when she saw appellant come back to retrieve his car keys he had left on top of the recycling bin near the side door to the house. When she next looked out, she noticed that Brown's gun was no longer on the hood of her vehicle.

{¶ 7} Hampton's daughter, T.C., testified that she ran to her upstairs bedroom window when she heard Brown and appellant yelling at each other outside. She first saw Brown and appellant pointing guns at one another. When appellant told Brown to get on the ground, T.C. heard Brown say "no," but she also saw Brown place his gun down on the hood of the vehicle and then put his hands up. T.C. heard Brown utter words to the effect of "you really going to shoot me?" (Tr. Vol.

II at 224.) For the next one and one-half minutes, appellant continued to yell at Brown and then T.C. watched as appellant shot Brown in the face. As Brown staggered back out of her view, T.C. saw appellant continue to shoot in his direction. T.C. then saw appellant take Brown's gun from the hood of the vehicle and walk back to his vehicle. She also saw him return to get his keys off the recycle bin.

{¶ 8} One of Hampton's neighbors heard the gunshots and saw appellant drive away. She got the license plate and called police. Other neighbors testified that they saw appellant walking away from the scene and then briefly returning before getting in his vehicle and driving away. Whitehall police officer Kendall Tiega arrived at the scene about ten minutes after the shooting while Brown was still alive.

According to Tiega, Brown was able to tell her that a man named Kyle had shot him.

{¶ 9} Appellant's vehicle was spotted shortly thereafter by another Whitehall police officer, and when appellant stopped at a tobacco store, he was taken into custody without incident. Two handguns were recovered from appellant's vehicle: a 9mm semi-automatic pistol with a 15-round magazine that was fully loaded and operable but had not been fired, and appellant's 9mm semi-automatic pistol with a 14-round magazine that contained 2 rounds. Ten shell casings matching appellant's pistol were recovered from the scene.

{¶ 10} The evidence shows that Brown was shot ten times, once through the front of his eye, twice through his forearm, and seven more times in his back. The coroner's report lists "[m]ultiple gunshot wounds" as the cause of death. (State's Ex. E, Coroner's Report at 2.)

{¶ 11} On July 6, 2015, a Franklin County Grand Jury indicted appellant on charges of aggravated robbery, in violation of R.C. 2911.01, a felony of the first degree; kidnapping, in violation of R.C. 2905.01, a felony of the first degree; two counts of aggravated murder, in violation of R.C. 2903.01, an unspecified felony; two counts of murder, in violation of R.C. 2903.02, an unspecified felony; and tampering with evidence, in violation of R.C. 2921.12, a felony of the third degree. With the exception of the tampering with evidence charge, each of the charges in the indictment was accompanied by a firearm specification.

{¶ 12} Appellant did not deny shooting and killing Brown, but he claimed that he did so in self-defense. A jury found appellant guilty of all charges and specifications with the exception of the count and specification for aggravated murder with prior calculation and design and tampering with evidence.

{¶ 13} The trial court convicted appellant and sentenced him to a prison term of 20 years to life, plus an aggregate consecutive prison term of 6 years for the

3

firearm specifications.FN1 Appellant timely appealed to this court from the judgment of conviction and sentence.

FN1:  The trial court merged the counts in the indictment charging appellant with murder for purposes of conviction and sentence. (Jan. 22, 2018 Sentencing Hearing Tr. at 36.)

ASSIGNMENT OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED MURDER; MURDER; KIDNAPPING; AND AGGRAVATED ROBBERY AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*State v. Kurtz*, 10th Dist. No. 17AP-382, 2018 WL 4677567, at *1-2 (Ohio Ct. App. Sept. 27, 2018).  On September 27, 2018, the appellate court affirmed the trial court's judgment.  *Id*. Petitioner did not file a timely appeal.  On November 12, 2019, he filed a motion for a delayed appeal.  (Doc. 10, PAGEID # 159).  On December 31, 2019, the Ohio Supreme Court denied the motion for a delayed appeal.  *State v. Kurtz*, 57 Ohio St.3d 1523 (Ohio 2019).

In October and December 2019, Petitioner filed requests for the appointment of counsel for the filing of a state post-conviction petition and motion for expert assistance.  (Doc. 10, PAGEID # 198, 203, 217).  However, although Petitioner indicates that he has a post-conviction petition pending in the state trial court (Doc. 1, PAGEID # 3, 10), the record does not show that Petitioner has pursued state post-conviction relief.

On November 25, 2019, Petitioner filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254.  He asserts that retroactive application of House Bill 228 on Ohio's law regarding self-defense renders his convictions void (claim one); that he unconstitutionally had to

4

establish he acted in self-defense by a preponderance of the evidence (claim two); that his convictions result from erroneous jury instructions on aggravated robbery, aggravated murder, kidnapping, aggravated robbery, the definition of theft, use of deadly force, preponderance of evidence, and the duty of retreat (claims three through ten, and twelve); that his convictions are based on structural error (claim eleven); his convictions violate the Eighth Amendment (claim thirteen); and that he was unconstitutionally convicted on a now deficient presumption of self-defense (claim fourteen).

## II.    PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State may have a fair chance to correct any errors made

5

in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that, if the claims are not presented to the state courts in the way in which state law requires, and consequently, the state courts do not decide the claims on their merits, neither may a federal court. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (holding that "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted").

To determine whether a habeas petitioner has procedurally defaulted a claim, courts consider whether: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforce that rule; (3) the rule is an adequate and independent state ground for denying review of a petitioner's federal constitutional claim; and (4) the petitioner can show cause and prejudice excusing the default. *Williams v. Burt*, 949 F.3d 966, 972–73 (6th Cir. 2020) (citing *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*)); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986) (outlining the four-factor *Maupin* test).

### a.  Application

Petitioner failed to raise any of his claims on direct appeal. "It is well-settled that '[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*.'" *Mason v. Warden, Noble Corr. Inst*., No. 2:19-

cv-4695, 2020 WL 3972497, at *3 (S.D. Ohio July 14, 2020) (citing *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *15 (S.D. Ohio May 2, 2018)). Thus, Petitioner violated the *res judicata* rule set forth in *State v. Perry*, 10 Ohio St.2d 175 (1967), when he failed to raise his claims on direct appeal, and consequently satisfied the first prong of the *Maupin* test.

With respect to the second *Maupin* factor, Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of procedurally barred claims. *See, e.g.*, *State v. Cole*, 2 Ohio St.3d 112 (1982). Further, the Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and adequate ground for denying federal habeas relief. *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Accordingly, the Court is satisfied from its own review of relevant case law that the *res judicata* rule articulated in *Perry* is an adequate and independent ground for denying relief.

Moreover, Petitioner failed to file a timely appeal in the Ohio Supreme Court. To the extent that Petitioner now argues that the evidence is constitutionally insufficient to sustain his convictions or that his convictions were against the manifest weight of the evidence (*see*, Doc. 18), he likewise thereby has waived these issues for review here.[1] *See Hayward v. Warden, Grafton Corr. Inst.*, No. 2:19-cv-1313, 2019 WL 2058628, at *7 (S.D. Ohio May 9, 2019) (citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)).

Further, Petitioner has failed to establish cause for his procedural defaults. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that]

---

[1] Petitioner's manifest weight claim does not, in any event, provide a basis for federal habeas relief. *See Hayward*, 2019 WL 2058628, at * 8 (citations omitted).

impeded ... efforts to comply with the State's procedural rule.'" *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla*, 370 F.3d at 498. Instead, to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to meet this burden here.

## III.     DISPOSITION

Therefore, it is **RECOMMENDED** that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.


Date: August 19, 2020                         /s/Kimberly A. Jolson
                                              KIMBERLY A. JOLSON
                                              UNITED STATES MAGISTRATE JUDGE